## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AURORA HOSPITALITY GROUP LLC, | ) | Case No. 22-12930 |
| | ) | |
| Debtor. | ) | Honorable LaShonda A. Hunt |
| | ) | |

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on **December 8, 2022, at 11:00 a.m.**, or as soon thereafter as counsel may be heard, we will appear before the Honorable Judge LaShonda A. Hunt, or any judge sitting in that judge's place, **either** in Courtroom 719 of the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604 **or** electronically as described below, and then and there present the ***Motion to Dismiss the Debtor's Chapter 11 Case, or, in the Alternative Lift the Automatic Stay*** (the "Motion"), a copy of which is hereby served upon you.

**All parties in interest, including the movant, may appear for the presentment of the motion either in person or electronically using Zoom for Government.**

You may appear electronically by video or by telephone.

> **To appear by video, use this link: https://www.zoomgov.com/join. Then enter the meeting ID and password.**
>
> **To appear by telephone, call Zoom for Government at 1-669-254-5252 or 1-646-828- 7666. Then enter the meeting ID and password.**
>
> **Meeting ID and passcode. The meeting ID for this hearing is 161 165 5696 and the passcode is 7490911. Additional information can be found on Judge Hunt's webpage on the court's website: https://www.ilnb.uscourts.gov/content/judge-lashonda-hunt**

**PLEASE TAKE FURTHER NOTICE** that if you object to this Motion and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the Motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the Motion in advance without a hearing.

Dated: December 1, 2022

Respectfully submitted,

**CACHE PRIVATE CAPITAL DIVERSIFIED FUND, LLC**

By:   /s/ Sean P. Williams
Elizabeth B. Vandesteeg, Esq.
Sean P. Williams, Esq.
**LEVENFELD PEARLSTEIN, LLC**
2 N. La Salle, Suite 1300
Chicago, Illinois 60602
Telephone: 312-346-8380
e-mail: evandesteeg@lplegal.com
e-mail: swilliams@lplegal.com

## CERTIFICATE OF SERVICE

      I, Sean P. Williams, the undersigned attorney, hereby certify that on December 1, 2022, I caused a copy of the ***Notice of Motion*** and ***Motion to Dismiss Chapter 11 Case or, in the Alternative, Motion for Relief from the Automatic Stay***, to be filed via the Court's ECF system and sent via first class U.S. mail (without exhibits, which may be requested by contacting counsel), as indicated below.

                                          /s/ Sean P. Williams

## SERVICE LIST

**VIA CM/ECF**
William B Avellone
bill.avellone@charteredmgt.com

Matthew R Bowman on behalf of Creditor Cache Private Capital Diversified Fund, LLC
rbowman@lgattorneys.com, nwollenberg@levinginsburg.com

David Freydin on behalf of Debtor 1 Aurora Hospitality Group LLC
david.freydin@freydinlaw.com, vincent@freydinlaw.com

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Sean P. Williams on behalf of Creditor Cache Private Capital Diversified Fund, LLC
swilliams@lplegal.com,
ikropiewnicka@lplegal.com;bdroca@lplegal.com;druiz@lplegal.com;nbailey@lplegal.com

**VIA FIRST CLASS U.S. MAIL**

Aurora Hospitality Group LLC
PO BOX 6091
Aurora, IL 60598-0091

Department of the Treasury
Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

DuPage County Treasurer
Barbara Q. Reynolds
503 N. County Farm Road
Wheaton, IL 60187-3942

Internal Revenue Service
Mail Stop 5014CHI
230 South Dearborn Street Room 2600
Chicago, IL 60604-1705

Kenneth Moore
PO BOX 6091
Aurora, IL 60598-0091

Real Estate America LLC
c/o Randal L Olson, Trustee
PO BOX 506
Pecatonica, IL 61063-0506

David Freydin
Law Offices of David Freydin Ltd
8707 Skokie Blvd Suite 312
Skokie, IL 60077-2281

Patrick S Layng  Office of the U.S. Trustee, Region 11
219 S Dearborn St Room 873
Chicago, IL 60604-2027

William B Avellone  Chartered Management Company, Inc.
10 S. Riverside Plaza Suite 875
Chicago, IL 60606-3717

2

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| AURORA HOSPITALITY GROUP LLC, | ) Case No. 22-12930 |
| Debtor. | ) Honorable LaShonda A. Hunt |

**MOTION TO DISMISS CHAPTER 11 CASE OR, IN THE ALTERNATIVE,**
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Cache Private Capital Diversified Fund, LLC ("Cache"), hereby files this Motion (the "Motion") seeking an order under sections 362 and 1112(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 1017, 2002, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (a) dismissing the chapter 11 case (the "Chapter 11 Case") filed by Aurora Hospitality Group, LLC, the above-captioned debtor (the "Debtor"), or, in the alternative; (b) lifting the automatic stay in order to enable Cache to continue state court proceedings. In support of the Motion, Cache submits the *Declaration of M. Reas Bowman in Support of Motion to Dismiss Chapter 11 Case or, in the Alternative, Motion for Relief from the Automatic Stay* (the "Bowman Declaration," attached hereto as Exhibit 1) and respectfully states as follows:

**PRELIMINARY STATEMENT[1]**

1. After exhausting every available remedy in the State Court Case, the Debtor filed this Chapter 11 Case as a last-ditch effort to avoid foreclosure of the Property. The Debtor has zero

---

[1] Capitalized terms used but not defined in the Preliminary Statement shall have the meaning given to such term in the Motion.

chance to reorganize using the chapter 11 process, as it has no significant assets (other than the Property) and no business operations, employees, or income. It is clear that this Chapter 11 Case is nothing more than a two-party dispute filed only to halt foreclosure proceedings in the State Court Case. Given that the case was filed in bad faith, this Court should dismiss the Chapter 11 Case to allow Cache to finally sell the Property through the State Court Case. In the alternative, this Court should lift the automatic stay to allow the State Court Case to proceed to foreclosure.

## JURISDICTION AND VENUE

2. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A. The Loan and Foreclosure Case

4. On March 31, 2019, the Debtor executed a note in favor of Cache (the "Note," attached to the Bowman Declaration as Exhibit A), providing that Cache would lend the Debtor $853,000.00 (the "Loan"). The Loan was secured by: (a) that certain mortgage (the "Mortgage," attached to the Bowman Declaration as Exhibit B) executed by the Debtor, in favor of Cache, pledging the real estate with the common address of Route 59 (Lot 5) on Drexel Avenue, Aurora, Illinois 60605 (the "Property"); and (b) a personal guaranty ("Guaranty") executed by Janee Hotel Corporation and Kenneth Moore (collectively, the "Guarantors"). Bowman Declaration at ¶ 3-4, 6. The Property is currently vacant, unimproved land on which the Debtor sought to construct a hotel with conference center and a surface parking lot. Bowman Declaration at ¶ 5.

5. On February 9, 2021, after a default under the Note, Cache filed its *Complaint* (the

2

"Complaint," attached to the Bowman Declaration as Exhibit C) in the Circuit Court for the Eighteenth Judicial District (DuPage County) (the "State Court"), initiating Case No. 2021 CH 000044 (the "State Court Case"), seeking: (a) a judgment of foreclosure and sale of the Property; (b) an order recognizing that the redemption period was waived; (c) confirmation of sale and the issuance of a certificate of sale to the purchaser; (d) a personal deficiency decree against the Debtor and Guarantors; and (e) Cache's reasonable costs and expenses to enforce the loan agreements. Bowman Declaration at ¶ 6.

6. On May 27, 2022, Cache filed its *Motion for Summary Judgment* (the "MSJ"), seeking the entry of summary judgment against the Debtor and Guarantors in accordance with the Complaint. On July 21, 2022, the State Court entered an order granting the MSJ. On September 6, 2022, the State Court entered its *Judgment of Foreclosure and Sale* (the "Judgment of Foreclosure," attached to the Bowman Declaration as Exhibit D), holding that:

> Judgment of Foreclosure and Sale is entered in favor of Plaintiff, against all defendants against whom summary judgment has been entered. That Plaintiff is the holder of a valid Mortgage on the real estate described in Paragraph 15 below, the lien of which Mortgage is hereby foreclosed and the priority of which is adjudicated in paragraph 11 below, to secure payment of the Note, the outstanding current indebtedness on the Note stands at $1,499,076.07 as of the dates set forth above, including all principal, interest, advances, late fees, attorneys' fees and costs.

Judgment of Foreclosure at ¶ 10; Bowman Declaration at ¶ 7.

7. After entry of the Judgment of Foreclosure, the Debtor and Guarantors filed their *Emergency Motion to Stay the November 8, 2022 Judicial Sale* (the "Emergency Motion"), seeking to stay the judicial sale on the grounds that the Debtor had a non-binding letter of intent to sell the Property. In addition, the Debtor filed its *Motion for Reconsideration of the Orders Granting Plaintiff's Motion for Summary Judgment and Judgment of Foreclosure and Sale* (the

3

"Reconsideration Motion"). On November 4, 2022 via the *Order* (the "November 4 Order," attached to the Bowman Declaration as Exhibit E), the State Court denied the Emergency Motion and Reconsideration Motion and held that the "November 8, 2022 foreclsure [sic] sale in this matter may proceed." November 4 Order at ¶ 3; Bowman Declaration at ¶ 8.

8. On October 12, 2022, Cache filed its *Certificate of Publication* (the "Certificate of Publication," attached to the Bowman Declaration as Exhibit F), indicating that a sheriff's sale (the "Sale") would occur on November 8, 2022. Certificate of Publication; Bowman Declaration at ¶ 9.

B. **The Bankruptcy Filing and the Debtor's Actions in Bankruptcy**

9. On November 7, 2022, on the eve of the Sale, the Debtor filed the Chapter 11 Case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

10. The Debtor's petition, schedules (the "Schedules"), and statement of financial affairs (the "SOFA") [Docket No. 1] indicate that it has only two creditors: Cache and an entity called Real Estate America, LLC ("RE America"), which is scheduled as having an unsecured claim of $100,000.00. According to the Illinois Secretary of State's website, RE America is one of managers of the Debtor. See Bowman Declaration at ¶ 10, Exhibit G. In addition, the Debtor has no significant assets other than the Property, as the Debtor lists only $174.00 in cash and a potential (unfiled) $31,000.00 fraud lawsuit.

11. Moreover, the SOFA indicates that the Debtor generated no income in the last three years and that the Debtor made no transfers in the ninety days prior to the Petition Date.

12. Since the filing of the Chapter 11 Case nearly one month ago, the Debtor has filed no substantive pleadings and has not sought to amend the Schedules or SOFA. The Debtor has also not made any payments to Cache.

4

**RELIEF REQUESTED**

13. Cache respectfully requests that this Court dismiss the Debtor's Chapter 11 Case, or, alternatively, lift the automatic stay to allow the State Court Case to proceed.

**BASIS FOR RELIEF**

**A. Dismissal of the Chapter 11 Case is Appropriate Under the Circumstances**

14. Section 1112(b) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause …" 11 U.S.C. 1112(b).

15. It is well established that a chapter 11 case is subject to dismissal for cause if not filed in good faith. Matter of Madison Hotel Associates, 749 F.2d 410 (7th Cir. 1984). Bankruptcy courts are increasingly intolerant of cases filed in bad faith and look to the totality of the circumstances when evaluating whether a petition has been filed in good faith. In re Local Union 722 Intern. Broth. Of Teamsters, 414 B.R. 443, 447 (Bankr. N.D.Ill. 2009) (citing In re Original IFPC Shareholders, Inc., 317 B.R. 738, 750 (Bankr. N.D. Ill. 2004)).

16. To be clear, bad faith does not require any "bad" conduct. Rather, courts look to objective factors to find bad faith. While section 1112(b) of the Bankruptcy Code sets forth a number of grounds that may constitute "cause" to dismiss, this list is not exhaustive, and a case may be dismissed or converted for causes other than those specifically identified in the Bankruptcy Code. See In re Tekena USA, LLC, 419 B.R. 341, 346 (Bankr. N.D. Ill. 2009); Matter of Strug-Division, LLC, 375 B.R. 445, 448 (Bankr. N.D. Ill. 2007). For example, Judge Cox in Tekena, looked for the presence of some of these factors:

    i. The debtor has few or no unsecured creditors (see § i infra).

    ii.      There has been a previous bankruptcy petition by the debtor or a related entity (does not apply in the Chapter 11 Case).

    iii.     The pre-petition conduct of the debtor has been improper (see § ii infra).

    iv.     The petition effectively allows the debtor to evade court orders (see § ii infra).

    v.      There are few debts to non-moving creditors (see § i infra).

    vi.     The petition was filed on the eve of foreclosure (see § iii infra).

    vii.    The foreclosed property is the sole or major asset of the debtor (see § iv infra).

    viii.   The debtor has no ongoing business or employees (see § v infra).

    ix.     There is no possibility of reorganization (see § v infra).

    x.      The debtor's income is not sufficient to operate (see § v infra).

    xi.     There was no pressure from non-moving creditors (see § i infra).

    xii.    Reorganization essentially involves the resolution of a two-party dispute (see § i infra).

    xiii.   A corporate debtor was formed and received title to its major assets immediately before the petition (does not apply in the Chapter 11 Case).

    xiv.   The debtor filed solely to create the automatic stay (see § iii infra).

Id. Other courts in this District have positively cited and considered the Tekena factors in their decision whether to dismiss a chapter 11 case. See, e.g., In re Lake Michigan Beach Pottawattamie Resort LLC, 547 B.R. 899, 905 (Bankr. N.D. Ill. 2016); In re Bovino, 496 B.R. 492, 499 (Bankr. N.D. Ill. 2013); In re LJBV LTD, 544 B.R. 401, 404 (Bankr. N.D. Ill. 2016); In re Medina, No. 14-27755, 2014 WL 5842988, at *4 (Bankr. N.D. Ill. Nov. 7, 2014).

    17.     Because twelve of the fourteen Tekena factors apply, the Chapter 11 Case should be dismissed as a bad faith filing.

>  i. **Tekena Factors 1, 5, 11, and 12**. **The Debtor has Few or No Unsecured Creditors, There are Few Debts to Non-Moving Creditors, There is No Pressure From Non-Moving Creditors, and the Chapter 11 Case is Effectively a Two-Party Dispute.**

18. A number of the Tekena factors relate to the number, aggressiveness, and identity of the debtor's creditor body. The first, fourth, eleventh, and twelfth Tekena factors relate to the creditor body, go hand-in-hand, and are met in this Chapter 11 Case.

19. The first factor is that "the debtor has few or no unsecured creditors," and the fourth factor is that there are "few debts to non-moving creditors." Tekena, 419 B.R. 346. In the Chapter 11 Case, the Debtor's Schedules indicate that there is only one unsecured creditor. However, the Debtor's one unsecured creditor is also an insider (manager) of the Debtor according to the Illinois Secretary of State's website. See Bowman Declaration, Exhibit G.

20. Regardless of the legitimacy of the RE America claim, which has yet to be established, an insider claim is insufficient to show evidence of "other creditors." Compare In re U.S. Loan Co., Inc., 105 B.R. 676, 679 (Bankr. M.D. Fla. 1989) (dismissing case where "[d]ebtor ha[d] no unsecured debts of any consequence except what might be owed to insiders") with Arm Ventures, LLC, 564 B.R. 77, 86 (Bankr. S.D. Fla. 2017) (refusing to dismiss case where "there is significant non-insider unsecured debt").

21. Clearly, given the insider nature of the Debtor's only unsecured debt, there is no pressure from "non-moving creditors" (the eleventh factor of the Tekena test). Moreover, this bankruptcy is essentially a two-party dispute (the twelfth factor of the Tekena test), as Cache is the Debtor's only non-insider creditor. In re LJBV LTD, 544 B.R. 401, 406 (Bankr. N.D. Ill. 2016) (dismissing chapter 11 case that was "essentially the resolution of a two-party dispute"); In re Liptak, 304 B.R. 820, 831 (Bankr. N.D. Ill. 2004) (dismissing case that was "predominantly a

two-party dispute between" the debtor and a single creditor).

> ii. **Tekena Factors 3 and 4**. **The Prepetition Conduct of the Debtor has Been Improper and the Filing of the Petition Effectively Allows the Debtor to Evade Court Orders**

22. The Debtor's prepetition conduct has been improper in that it sought to stifle Cache's foreclosure efforts at every turn. Indeed, even once the Judgment of Foreclosure was entered, the Debtor filed the Emergency Motion and Reconsideration Motion, on the grounds that it had a non-binding letter of intent. The State Court properly and summarily denied both motions.

23. In addition, the filing of the Chapter 11 Case effectively allows the Debtor to evade the Judgment of Foreclosure and the Sale that was to occur the day after the Petition Date. See, e.g., In re LJBV LTD, 544 B.R. 401, 405 (Bankr. N.D. Ill. 2016) (dismissing case where "the petition effectively allows the Debtor to evade the state court order appointing a receiver").

24. Thus, the third and fourth factors of the Tekena test are met in the Chapter 11 Case and favor dismissal of the Debtor's bankruptcy case.

> iii. **Tekena Factors 6 and 14**. **The Petition was Filed on the Eve of Foreclosure and the Debtor Filed Solely to Create the Automatic Stay**

25. The petition was filed on the eve of the foreclosure Sale and the Debtor filed solely to create the automatic stay. Not only was the Chapter 11 Case filed months after the Judgment of Foreclosure, but it is undisputed that the case was filed the day before the sheriff's Sale was to occur. Moreover, as is clear from the Debtor's lack of action during the pendency of the Chapter 11 Case, the case filed simply to create the automatic stay and halt the Sale.

26. These factors are in favor of Cache and warrant dismissal of the Chapter 11 Case.

> iv. **Tekena Factor 7**. **The Foreclosed Property is the Sole or Major Asset of the Debtor**

27. The foreclosed Property is the only major asset of the Debtor. Besides the Property,

8

the Debtor's Schedules indicate that the Debtor has only $174.00 cash and a potential lawsuit in the amount of $31,000.00. Even assuming that the lawsuit is likely to result in proceeds to the Debtor, the Property constitutes 99.1% of the Debtor's assets.

28. Numerous cases have been dismissed where the sole asset of the debtor was a foreclosed property. In re Fairfield TIC, LLC, 594 B.R. 852, 862 (Bankr. E.D. Va. 2018) (dismissing case where sole asset was a fractional interest in a property); In re Serron Invs., Inc., No. BANKR. 11-12566-MT, 2012 WL 2086501, at *3 (B.A.P. 9th Cir. June 8, 2012) (dismissing case where debtor's "sole asset" was a property in foreclosure). Dismissal is similarly appropriate in the Chapter 11 Case, as the seventh factor of the Tekena test favors Cache.

> **v. Tekena Factors 8, 9, and 10. The Debtor has no Ongoing Business or Employees, the Debtor's Income is not Sufficient to Operate, and the Debtor has no Possibility of Reorganization**

29. It is undisputed that the Property is vacant, unimproved land on which the Debtor conducts no business. The Debtor also does not have any ongoing business or employees. The lack of an ongoing business enterprise has been considered in connection with the dismissal of a chapter 11 case in this District. See, e.g., In re Original IFPC S'holders, Inc., 317 B.R. 738, 751 (Bankr. N.D. Ill. 2004) (dismissing a chapter 11 case where the debtor had, among other things, no "ongoing business to reorganize").

30. In addition, the Debtor's statement of financial affairs (the "SOFA") indicates that the Debtor has never generated income, has no accounts receivable, and made no transfers over $7,575.00 in the ninety days prior to the Petition Date. SOFA at §§ 1-3; Schedule A at § 10. Simply put, the Debtor does not have sufficient (or any income) with which to operate or fund a plan of reorganization.

31. Finally, given the Debtor's lack of operations and income, there is no possibility of

9

reorganization. Indeed, the only thing the Debtor can possibly hope for is a sale or refinancing of the Property, which the Debtor has shown no evidence of thus far in the Chapter 11 Case.

32. Because the Debtor does not conduct business, has no income, and cannot possibly reorganize, the dismissal of the Chapter 11 Case is necessary and appropriate.

### vi. The Debtor's Filings are Inaccurate

33. Finally, the Debtor's filings with this Court to date are wholly inaccurate. Courts in this district have held that "the accuracy of schedules and statements of affairs is one of several factors to be taken into consideration under the standard of 'good faith' in the filing of a case, it is a critical factor." In re Jongsma, 402 B.R. 858, 873 (Bankr. N.D. Ind. 2009); In re McNichols, 254 B.R. 422, 432 (Bankr. N.D. Ill. 2000) ("The obligation is strict and the law requires such schedules to be as reasonably complete and accurate as possible. A paramount duty of the debtor is the duty to file a list of creditors, schedules of assets, liabilities, income and expenditures, and a statement of financial affairs."). From the face of the documents, it appears that the Debtor has not provided accurate information to the Court and its creditors with the Schedules and SOFA.

34. First, the Debtor's *List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* [Docket No. 1, p. 7] lists an insider party as one of the top twenty largest creditors. Given the Tekena factors, the identity of the Debtor's unsecured creditors has actual relevance. Without Cache's own research, it may not have been apparent to this Court or to any other parties that the Debtor does not have any non-insider creditors.

35. Moreover, the Debtor's list of its "officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case" is either inaccurate or inconsistent with the Debtor's filings with the Secretary of State. The Illinois Secretary of State's website lists two entities as the manager of

10

the Debtor (RE America and Route 59 Investment Properties, LLC), while the SOFA lists only one manager, Kenneth Moore. See Exhibit G.

36. Finally, the Debtor failed to list any litigation, despite the obvious existence of the State Court Case, which led to the filing of the Chapter 11 Case. SOFA at § 7.

37. The purpose of bankruptcy "is to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." In re Neal, No. 12 B 26305, 2014 WL 1424941, at *10 (Bankr. N.D. Ill. Apr. 8, 2014) (quotations and citations omitted). Unfortunately, given the Debtor's business, assets, and lack of options, the Debtor had very few options other than filing the Chapter 11 Case and has very few viable options to exit chapter 11. It is clear that the Debtor filed this Chapter 11 Case in bad faith to halt the State Court Case. Given that twelve of the fourteen Tekena factors weigh in favor of Cache, the Chapter 11 Case must therefore be dismissed.

### B. Dismissal of the Chapter 11 Case is Appropriate

38. The question of whether conversion or dismissal is in the best interests of creditors and the estate is a question committed to the discretion of the bankruptcy court. In re Aurora Memory Care, LLC, 589 B.R. 631, 638 (Bankr. N.D. Ill. 2018). In answering that question, courts often weigh which course of action will lead to the largest number of creditors receiving the most amount of money in the shortest period of time. Id. at 643. Courts also compare how creditors would fare trying to collect from the debtor in bankruptcy court as opposed to outside of bankruptcy. Id. In comparing those two scenarios, a key question is the availability of estate assets for a chapter 7 trustee to liquidate and use to pay creditors the money the debtor owes them. Id.

39. As set forth above, the Debtor does not have any non-insider creditors other than

11

Cache and has no significant assets other than the Property. Thus, there would be very little for a chapter 7 trustee to liquidate and it is unlikely that there would be significant funds available to administer the case.

40. Moreover, even if there were significant assets to administer, conversion to chapter 7 would simply add another layer of administrative expenses (in the form of trustee's fees) to the Debtor's estate and further reduce the potential recovery of creditors.

**C. In the Alternative, the Court should Lift the Automatic Stay to Allow Cache to Proceed in the State Court Case.**

41. In the alternative, the Court should lift the automatic stay to allow Cache to proceed in the State Court foreclosure proceeding.

   **i. Relief from the Automatic Stay is Appropriate Pursuant to Section 362(d)(2) of the Bankruptcy Code**

42. Section 362(d) provides that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
>> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>>
>>> (A) the debtor does not have an equity in such property; and
>>> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).

43. Cache believes that the Debtor's Schedules vastly overstate the value of the Property and that the Debtor may not have any equity in the Property. Moreover, the Property is clearly not necessary for an effective *reorganization*, as there are no operations or business

12

conducted on the Property and there will not be any operations without significant additional funding.

### ii. Lifting the Automatic Stay under Section 362(d)(3) of the Bankruptcy Code is Appropriate

44. Section 362(d)(3) applies to single asset real estate bankruptcies and provides that:

> (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—/
>
> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>
> (B) the debtor has commenced monthly payments that—
>
> > (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
> >
> > (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate.

11 U.S.C. § 362(d)(3).

45. The Property is single asset real estate under the Bankruptcy Code. Section 101(51B) of the Bankruptcy Code defines "single asset real estate" as "real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and

13

on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto." 11 U.S.C. § 101.

46. The elements of a single asset real estate property, all of which apply to the Property are as follows: "(1) the debtor must have real property constituting a single property or project (other than residential real property with fewer than 4 residential units), (2) which generates substantially all of the gross income of the debtor, and (3) on which no substantial business is conducted other than the business of operating the real property and activities incidental thereto." In re Alvion Properties, Inc., 538 B.R. 527, 532 (Bankr. S.D. Ill. 2015).

47. Numerous courts, including in this district have held that vacant land can be single asset real estate. In re Syed, 238 B.R. 133, 140 (Bankr. N.D. Ill. 1999) ("The definition of 'single-asset real estate' has been found to include partially developed land generating no income as well as raw land"); In re Mountain Edge LLC, 2012 WL 4839784, at *3 (Bankr.D.N.M.2012) (it is generally accepted that raw land or real property acquired and/or held for development falls within the definition of SARE); In re Oceanside Mission Associates, 192 B.R. 232, 236 (Bankr.S.D.Cal.1996) (after analysis of the legislative history of 101(51B), the court concluded that single asset real estate includes undeveloped property which generates no income); In re Kkemko, Inc., 181 B.R. 47, 51 (Bankr.S.D.Ohio 1995) (single asset real estate means a building or buildings which were intended to be income producing, or raw land).

48. Therefore, because the Chapter 11 Case is a single asset real estate case, if this case is still pending ninety days from the Petition Date and the Debtor has failed to: (a) file a plan with the possibility of being confirmed or (b) make monthly interest payments to Cache, the automatic stay must be lifted in order to allow the State Court Case to proceed under section 362(d)(3) of the Bankruptcy Code.

### iii. The Automatic Stay May be Lifted Due to the Debtor's Bad Faith in Filing

49. In addition, the automatic stay may be lifted under section 362(d)(1) because the Debtor lacked good faith in filing his petition. "A lack of good faith in filing a petition constitutes cause for relief from the stay under 11 U.S.C. § 362(d)(1)." In re Posner, 610 B.R. 586, 591 (Bankr. N.D. Ill. 2019). As set forth above, the Debtor did not file this case in good faith, given the "totality of the circumstances," but rather for the sole reason of not the Property sold via foreclosure. The automatic stay may therefore be lifted on those grounds as well.

**WHEREFORE**, Cache respectfully requests that this Court enter an order substantially in the form submitted herewith granting the relief requested herein and such further relief as may be equitable and just.

Dated: December 1, 2022

Respectfully submitted,

**CACHE PRIVATE CAPITAL
DIVERSIFIED FUND, LLC**

By: /s/ Sean P. Williams
Elizabeth B. Vandesteeg, Esq.
Sean P. Williams, Esq.
**LEVENFELD PEARLSTEIN, LLC**
2 N. La Salle, Suite 1300
Chicago, Illinois 60602
Telephone: 312-346-8380
e-mail: evandesteeg@lplegal.com
e-mail: swilliams@lplegal.com